UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                                                    CRIMINAL ACTION NO. 3:13CR-98-S

RAYNER MATOS                                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on motion of the defendant, Rayner Matos, for an order *in limine* precluding the United States from offering evidence of handwriting or handprinting analysis performed in this case, and for an evidentiary hearing. DN 48.

The United States has filed an exhaustive 28-page response to the motion. It notes that

> While the United States may not need to introduce the forensic examination in its case-in-chief, there may be certain scenarios in rebuttal that such testimony may prove important. The United States believes the forensic document examination may be relevant to materiality or to rebut a claim that Matos did not write the letter in question. As such, the United States seeks to establish the admissibility of the testimony of Carl R. McClary under Fed.R.Evid. 702.

(DN 50, p. 4).

The facts giving rise to the indictment of Matos are as follows:

On or about April 25, 2012, Ted Schlenker, while under investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") for federal firearms violations, mailed a handgun and an anonymous threatening handwritten letter to the home address of a BATFE special agent. Schlenker pled guilty to a two count indictment charging him with mailing a firearm and threatening communication.

During the course of the investigation, Matos, an acquaintance of Schlenker, was interviewed by agents of BATFE. On July 17, 2012 and again on August 7, 2012, Matos allegedly lied when he denied having written the threatening letter in question. On August 7, 2012, Matos provided handwriting exemplars for comparison with the letter and envelope sent by Schlenker. On September 4, 2012, Matos and his attorney met with BATFE to provide fingerprints and, at that time, purportedly admitted that he wrote the letter for Ted Schlenker.

Matos was indicted on July 2, 2013 for making materially false, fraudulent, or fictitious statements in July and August, 2012 to BATFE agents concerning the writing of the letter. In advance of trial, Matos has moved the court to exclude anticipated handwriting analysis evidence to prove that Matos wrote the letter in question. As grounds for the motion, Matos has urged that the principles regarding the uniqueness of handwriting, and more particularly in this case, handprinting, fail to satisfy the standard for admissibility established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Matos' motion states that "the government disclosed a six (6) page report prepared by Forensic Document Examiner, Carl R. McClary." DN 48, p. 1. Matos sought disclosure pursuant to Fed.R.Crim.P. 16(A)(1)(f) of lab notes, writings, documents, and photographs taken by any expert or other individual asked to give an opinion on handwriting exemplars of Matos or Ted Schlenker. DN 23. In its response, the United States indicated that it "disclosed the expert report for Carl R. McClary." DN 33, p. 1. The six-page document[1] is a laboratory report which describes what was received, what was observed in each document, the results, and the disposition of the evidence.

---

[1] There is also a two-page laboratory report created three months earlier which was attached as an exhibit to the United States' response, but is not discussed in the brief.

It appears that Matos did not request a written summary of McClary's testimony, pursuant to Fed.R.Crim.P. 16(a)(1)(G)(*"At the defendant's request*, the government must give the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial...The summary...must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." (emphasis added)). While not required, the absence of a summary of testimony in the record from the expert addressing the methodology, the facts and data evaluated, and the application of the principles and methods to the facts of the case leaves this court unable to assess the admissibility of the proposed evidence. The erudite brief of the United States addresses methodology in handwriting and handprinting analysis, and offers McClary's credentials in support of its position that McClary is highly qualified and experienced in this field. The United States also paraphrases the results of McClary's examination. What is missing, however, is any evidence as to the principles and methods applied in the case or the sufficiency of the data evaluated. Statements of counsel do not constitute evidence in the case.

Matos' motion is itself of limited assistance, and he did not file a repy. He cites only *United States v. Hidalgo*, 229 F.Supp.2d 961 (D.Az. 2002) which is non-binding authority for this court. However, *Hidalgo* was decided after *Kumho Tire* and after amendment of FRE 702. The case of *Barnett v. Am. Heritage Life Ins.*, No. 06-2171P, 2007 WL 7611185 (W.D.Tenn. Nov. 19, 2007), addressed the issue of the admissibility of handwriting and handprinting expert testimony after *Kumho Tire*. The court in *Barnett* ultimately adopted the reasoning in *Hidalgo,* finding that the principle of uniqueness of handwriting or handprinting failed to satisfy a *Daubert/Kumho* analysis. After finding the expert qualified through extensive experience in the field, the court permitted the expert to testify to the mechanics and characteristics of handwriting, his methodology, and his

comparisons of similarities and dissimilarities between Barnett's known writings and those of the questioned documents. However, the expert was precluded from offering an opinion as to authorship or testifying that there were "indications" that Barnett authored the questioned item. *Id.* at *8.

While there is ample authority in this and other circuits for admitting expert testimony concerning handwriting and handprinting analysis, there is little authority which identifies what the testimony was. In the seminal case in the Sixth Circuit of *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997), Judge Krupansky stated in concurrence that "I agree with the panel majority's conclusions that the district court did not abuse its discretion by finding that a card allegedly written by the defendant was authentic and hence admissible as a handwriting exemplar, and by admitting expert handwriting identification testimony from a forensic document examiner." However, nowhere in the opinion is the expert's testimony actually described.

In *United States v. Bullock*, No. 05-6741, 2007 WL 1958635 (6th Cir. July 3, 2007), the court noted that a forensic document examiner for the United States Postal Service who examined the signatures on certain questioned tax returns testified that defendant Rayborn signed a 2001 return and probably signed a 2000 return, and that defendant Bullock, Rayborn's accountant, probably signed Rayborn's wife's name on the 2001 return. However, there was apparently no issue raised as to the admissibility of the expert testimony generally or to the opinions in particular. The case thus provides no guidance on the point.

The United States urges that *Jones* is binding authority on this court and establishes the admissibility of expert opinion as to the writer of a document subject to comparison analysis. DN 50, p. 16. There are a number of problems with this statement.

First, as noted previously herein, nowhere in the opinion is the expert's testimony described. Rather, the court held that "Given Sperry's various training experiences, his job responsibilities, his

years of practical experience, and the detailed nature of his testimony in this case, we hold that the district court did not abuse its discretion by admitting his testimony." 107 F.3d at 1161. The court finds no basis in *Jones* for the statement that the case establishes the admissibility of expert opinion as to the writer of a document.

Second, while *Jones* may state the last word in the Sixth Circuit on this issue, the continuing viability of that case must be addressed by this court in light of the United States Supreme Court's *Kumho Tire* decision.

> Ordinarily, a district court is bound to follow the holding of a prior decision of the Court of Appeals for the circuit in which the district court is located until that binding precedent is expressly overruled. 18 Moore's Federal Practice, § 134.02[2] (Matthew Bender 3d ed.). However, in rare instances in which a subsequent decision of the Court of Appeals sitting *en banc* implicitly overrules a prior precedent, making it clear that the reasoning and decision of the Court of Appeals would have been different under the new precedent, a lower court may be forced to treat the precedent from the Court of Appeals as having been overruled. See 18 Moore's § 134.05[6]. This approach would apply to an intervening decision of the Supreme Court, as well, where the intervening decision is clearly contrary to the prior panel precedent. "Federal district courts and circuit courts are bound to adhere to controlling decisions of the Supreme Court." *Hutto v. Davis*, 454 U.S. 370, 375 (1982). Also, "the stare decisis doctrine and its exceptions do not apply where a lower court is compelled to apply the precedent of a higher court." *Jaffee v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983).

*Nelson v. United States*, No. 04-560-CB-M, 2005 WL 5783768 (S.D.Ala. Dec. 13, 2005). *Kumho Tire* instructs that

> The objective of [*Daubert's* gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. Nor do we deny that, as stated in *Daubert*, the particular questions that it mentioned will often be appropriate for use in determining the reliability of challenged expert testimony. Rather, we conclude that the trial judge, must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony.

*Kumho Tire Co., Ltd.,* 526 U.S. 137, 152; 119 S.Ct. 1167, 1176; 143 L.Ed.2d 238 (1999).

The Sixth Circuit found in *Jones* that *Daubert* did not apply to non-scientific expert testimony such as handwriting analysis. As *Kumho Tire* found that the *Daubert* factors should be considered with respect to all expert testimony, we are constrained to find that *Jones* is not binding on this court. This is not to say that we believe that, under a *Daubert/Kumho* analysis, a result different from *Jones* would be reached. We focus on the journey rather than the destination. We must address anew the admissibility of handwriting and handprinting expert testimony through the lens of the *Daubert* and *Kumho* cases.

The court having concluded that insufficient evidence is contained in the record to address the question of the admissibility of the testimony of Carl R. McClary, an evidentiary hearing will be set by further order of the court. The motion of the defendant, Rayner Matos, for an order *in limine* precluding handprinting evidence (DN 48) is **HELD IN ABEYANCE** pending further development of the record. A hearing will be scheduled by further order of the court.

**IT IS SO ORDERED.**

May 13, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**